# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| WANDA ROBERTS, | : | |
| Plaintiff, | : | C.A. No.  S21C-10-017 CAK |
| v. | : | |
|  | : | |
| MOFFA CONSTRUCTION COMPANY LLC, | : | |
|  | : | |
| Defendant. | | |

Submitted:  January 31, 2024
Decided:  February 6, 2024

## OPINION AFTER EVIDENTIARY HEARING

*Upon Defendant's Motion to Enforce Settlement Agreement*

**DENIED**

James Liguori, Esquire and Gregory A. Morris, Esquire, Liguori & Morris, 46 The Green, Dover, Delaware 19901, Attorneys for the Plaintiff.

Phillip A. Giordano, Esquire, Neil R. Lapinski, Esquire and Christopher P. Clemson, Esquire, Gordon, Fournaris & Mammarella, P.A., 1925 Lovering Avenue, Wilmington, Delaware 19806, Attorneys for Defendant.

**KARSNITZ, RJ**

I write to more fully explain my reasoning for denying Defendant's Motion to Enforce what it believed to be a Settlement Agreement resolving this dispute. I gave an oral decision from the bench on Wednesday, January 31, 2024, following a contentious evidentiary hearing. I did so because I thought it was important for the parties to know that this litigation is not over, and to be able to plan accordingly. My hope is that this written opinion is more reflective as I have had time to digest what I heard at the hearing.

## PRELIMINARY THOUGHTS

Before the hearing, I expressed to the parties my concern as to whether I had jurisdiction to hear the motion. Defendant's claim sought to enforce a Settlement Agreement, which to me sounded like a request for specific performance. Such claims are within the jurisdiction of the Court of Chancery. I gave the parties an opportunity to brief the jurisdictional issue, and they ultimately declined to do so. I researched the jurisdictional issue as well, and found one case from this Court which declined to entertain a motion to enforce on jurisdictional grounds.[1] I also found a number of cases where the Superior Court did entertain and decide enforcement issues, which our Supreme Court affirmed without

---

[1] *Ihlenfeld v. Ihlenfeld*, 1996 WL 453431 (Del. Super. April 24, 1996).

comment on the jurisdictional issue.[2] Just prior to the evidentiary hearing, I asked counsel about the opportunity I gave them to brief the issues and they both told me they believed I had ancillary jurisdiction to address a motion to enforce a settlement of litigation pending before me. While I still have some question in my mind whether the parties are correct, my decision to deny the motion renders the jurisdictional issue moot.

My second preliminary comment concerns how the parties conducted the evidentiary hearing. Central to the question of whether the parties reached an enforceable agreement was the conduct of the lawyers involved. The lawyer for each party testified. Plaintiff's primary lawyer only participated in the hearing as a witness. His partner handled all questioning and argument. Defendant's lawyer testified and his partner questioned him. In contrast, however, Defendant's primary lawyer questioned other witnesses and argued the Motion.

A lawyer as a witness raises significant ethical concerns. I play no direct role in enforcing ethical requirements, but observed in real time how those concerns are legitimate. Defendant's primary attorney, who was a witness, also cross-examined Plaintiff's primary attorney. I do not have the transcript and can

---

[2] *Alston v. Pritchett*, 2015 WL 849689 (Del. Feb. 26, 2015); *Harrison v. United Water of Delaware, Inc.,* 783 A.2d 124 (Del. 2001) (TABLE).

only paraphrase. The questioning was along the lines of "didn't you say this to me?" Plaintiff's other counsel objected, and the question was withdrawn.

## FACTS

The case involved a routine, but emotional, dispute between a homeowner and contractor over a contract for significant renovations to the homeowner's home. Homeowners often take such issues personally. The contractor often feels an attack on his professional competence. The Court established a trial date of November 6, 2023. To my surprise, and contrary to the Case Scheduling Order, the depositions of the parties were taken on November 2, 2023.[3] The defense's view that is the depositions went well for Defendant. This "view" is important as one argument that was made to me is that Plaintiff did not want to go forward with settlement so that she would have time to shore up her case. I will address this contention in my analysis.

In any event, after the parties completed the depositions, a discussion of settlement ensued. Some difficulties arose in the settlement discussions. The parties took the depositions in the offices of attorneys unaffiliated with the case. Only a staff member of the unaffiliated lawyers was in the office, and she left

---

[3] The Court expects parties to follow Scheduling Orders. On the other hand, I give some deference if both parties agree. In any event, these depositions were taken much too late in the process.

4

before the depositions finished. When Plaintiff and her lawyer left the office, they were locked out. To make the settlement discussions ever more difficult, Plaintiff was in need of a bathroom facility, so she left the area to accommodate herself, and headed home.

Defendant's attorney realized Plaintiff had been locked out and let Plaintiff's attorney back in the office. Settlement discussion ensued, with Plaintiff's attorney at times on the phone with Plaintiff. Not surprisingly, money was central to the discussion – who paid, who received, how much, and when.

Plaintiff had originally demanded in excess of two hundred thousand dollars. Later in the litigation an expert hired by Plaintiff estimated damage in the range of three hundred thousand dollars. Defendant offered ten thousand dollars. Plaintiff lowered her demand to eighty thousand dollars. Defendant did not move. Plaintiff lowered her demand to forty thousand dollars. Defendant offered thirty thousand. Plaintiff agreed. Defendant then altered the offer to thirty thousand dollars payable in three equal installments over six months. Plaintiff agreed, and Plaintiff and Defendant's attorneys shook hands. Had that been the end of things, I might view the case differently.

Almost immediately after the handshake, Defendant made additional demands. Mr. Moffa, the owner of Defendant Moffa Construction, demanded a

confidentiality and non-disparagement clause. Mr. Moffa testified that a non-disparagement clause was important to him because during the course of the litigation Plaintiff had contacted a number of his customers to disparage him. In addition, Defendant's counsel said he would return to his office and prepare a written settlement agreement. He would include in the agreement the "usual" clauses, including one which would set out what happens if either party breached the contract. According to Mr. Moffa, Plaintiff's counsel said he thought those additions would not create a problem.

Plaintiff's counsel attempted repeatedly without success to reach his client on his ride home. He also made clear to Defendant's counsel the need to act with speed while the parties were in the mood to discuss settlement, and with a call to the Court set for Friday, November 3, and with the impending trial.

Defendant's counsel returned to his office and drafted the agreement. He sent it to Plaintiff's counsel. He also arranged for the document to be executed remotely through DocuSign. In order to use DocuSign, Defendant's counsel had to be able to send the document directly to Plaintiff. Plaintiff's counsel agreed and gave him Plaintiff's email address. The attorneys exchanged emails, and Plaintiff's attorney finally instructed Defendant's attorney to "send it," referring to the agreement, to Plaintiff.

To complicate matters, while the attorneys discussed the agreement, Plaintiff's attorney had to attend to a serious family matter. Plaintiff's counsel's view was that any agreement had to be in writing, and the writing approved by his client. Defendant's counsel's view is the parties had an oral agreement expressly confirmed by Plaintiff's counsel.

The last email from November 2, 2023, was from Plaintiff's counsel to Defendant's counsel. He sent it at 8:18 p.m. In it he expressed concern as to whether his client would agree to the agreement as drafted by defense counsel.[4]

At 7:57 a.m. the next morning Plaintiff's counsel emailed to Defendant's counsel a list of his witnesses and a draft verdict sheet. Defendant's counsel responded, again by email, with his witness list as well as revisions to the verdict sheet. He also addressed the availability of a witness. Finally, Defendant's counsel stated the following:

> Let me know as soon as you have any
> update re: settlement. I need to get
> my expert back moving on this if
> this is to go that route.[5]

Plaintiff's counsel followed up with an email indicating he would let Defendant's counsel know what his client's position was on settlement, and

---

[4] See Defendant's Exhibit 2 to the Evidentiary Hearing.
[5] *Id.*

indicating that, if the case does not settle, he would be asking for Court for a continuance of the trial.

The Court held a teleconference the afternoon of November 3. Plaintiff's counsel told me the case had not settled and that Plaintiff wanted the trial continued. Defendant's counsel said the parties had settled the case, and he would be filing this Motion to Enforce the Settlement Agreement. I continued the trial; Defendant filed this Motion, and I held the evidentiary hearing as described above.

## PARTIES' CONTENTIONS

Plaintiff claims that, since the parties never had a meeting of the minds, they never reached an agreement. Defendant contends that either the parties agreed to a bare bones contract as to payment and settlement of the lawsuit, or, in the alternative, Plaintiff's counsel, with authority, consented to the Settlement Agreement as prepared by Defendant's counsel. If the Court accepts the latter alternative, Defendant seeks attorneys' fees for breach of the agreement pursuant to paragraph C of the written document.[6]

---

[6] See Defendant's Exhibit 1 to the Evidentiary Hearing.

# ANALYSIS

Parties can reach an enforceable, oral agreement. Delaware uses an objective analysis to determine if an agreement is reached.[7] In other words, would an objective party looking at all relevant circumstances conclude the parties had agreed as to all material terms? The Court can imply all non-essential terms. The primary and typical essential term is price. Had the parties here agreed to what was to be paid, when, and to a dismissal of the lawsuit, my view may well have been different. But I find as a matter of fact that Defendant added additional terms to this agreement that Plaintiff never accepted. The additional terms included:

(1) Remedies for breach, including an attorney's fee shifting provision;

(2) A Non-disparagement and confidentiality clause; and

(3) Filing of the Stipulation of dismissal upon receipt of the first payment.

As to the non-disparagement clause, Mr. Moffa gave me conflicting information. On the one hand, he said the clause was important to him because Plaintiff had already disparaged him. On the other hand, he said it was not material to him and that he could accept the Agreement without it.

---

[7] *Cox Communications, Inc. v. T-Mobile US, Inc.,* 273 A.3d 752 (Del. 2022).

The testimony that the clause was not essential is part of the effort to support the claim that the parties reached a the bare bones agreement, and it is enforceable. The evidence to me showed that the non-disparagement clause was an essential part of the agreement, and thus, objectively, the parties did not reach agreement, despite the handshake.

Defendant's counsel also claims that Plaintiff's counsel said he did not think the additional terms would be a problem, and his direction to "send it," meaning the draft agreement, to his client evinces an intent to accept the full agreement. I reject both claims. First, saying that the one does not think additional terms would be a problem is not acceptance of those terms. Second, "send it" is not acceptance.

One other point. The conduct of counsel the next morning shows to me the attorneys did not believe the parties had reached an agreement. Defendant's counsel tells me the discussion of and preparation for trial are not relevant to the issue of whether the parties reached an agreement the day before, and cited to me cases in which the Court made that determination. I agree a party's self-serving statements made the day after are not persuasive. But here communications from Defendant's counsel, the party seeking to prove an agreement, contradict the contention. Those statements for me are highly relevant. Defendant's counsel seeks to discount the statements by contending he was only

following his obligations pursuant to the Court's request and scheduling order. Defendant's counsel felt it was acceptable to tell the Court there was no need for trial and Defendant would be filing a Motion to Enforce in lieu of trial. That unequivocally shows to me Defendant did not yet believe an agreement had been reached at the time he was preparing for trial.

The parties agree the proponent of the settlement has the burden to show by a preponderance of evidence the parties had an agreement for the proponent to be successful in a motion such as this. Defendant has not met its burden. Even assuming the most favorable view for the proponent, the evidence is in equipoise. I asked Defendant's counsel if Plaintiff's counsel's testimony that he never consented on his client's behalf to the agreement was untruthful. He said it was. I asked the same question of Plaintiff's counsel who was more gracious in his response, but the implication of Plaintiff's position is consistent with the view that Defendant's counsel's testimony is untruthful.

Plaintiff's counsel made a comment in his closing argument that went as follows. One of the strengths of the Delaware Bar is its size and closeness, which includes the knowledge that one is likely to see an attorney many times in other cases. He also commented that one of the weaknesses of the Delaware Bar is its size and closeness.

11

It is unfortunate this case is in the posture it is. The parties made great strides towards settlement in contentious litigation. The practice note is: if you believe you have an agreement, make sure both of the lawyers and clients are in agreement and sign off on it. Careful mediators do not let the parties leave the mediation table without material terms put in writing and signed by all parties.

It is unfortunate that the parties here made a substantial, but unfruitful, effort to settle this litigation. The filing of this Motion no doubt created ill will not only between the parties, but the lawyers as well. I am certain Plaintiff feels Defendant attempted to force an agreement upon her without her consent. I am equally certain Defendant feels he had an agreement which put this unfortunate and unhappy affair behind it. I hope both sides can put the feelings behind them.

Objectively the parties did not reach an agreement as to the material terms. The motion is **DENIED**. I instruct the parties to consult staff about a new trial date and an accompanying schedule.

<u>/s/ Craig A. Karsnitz</u>
Craig A. Karsnitz


cc: Prothonotary